# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:23-cv-00278-KDB

| | |
|---|---|
| GEORGE REYNOLD EVANS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| EDDIE BUFFALOE, JR., et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Amended Complaint [Doc. 22], filed under 42 U.S.C. § 1983. See 28 U.S.C. §§ 1915A and 1915(e).

## I. BACKGROUND

Pro se Plaintiff George Reynold Evans ("Plaintiff") is a prisoner of the State of North Carolina currently incarcerated at Lumberton Correctional Institution in Lumberton, North Carolina. He filed a Complaint on April 18, 2022, in the Superior Court of Wake County, North Carolina against Defendants Eddie Buffaloe, Jr., identified as the Secretary of the North Carolina Department of Public Safety (NCDPS)[1]; Mike Slagle, identified as the Warden at Mountain View Correctional Institution (MVCI); Dexter Gibbs, identified as an Associate Warden of MVCI; Kella Phillips, MVCI Captain; Kyle Wise, MVCI Lieutenant; and Robert Mask, MVCI Assistant Unit Manager. [Doc. 1-1]. Plaintiff made various allegations about the smoking of K-2 at MVCI, the disparate racial treatment at MVCI, retaliation for Plaintiff's litigation, denial or destruction of his legal materials, the shredding and mishandling of grievances, and Plaintiff being subject to threats and intimidation. [See Doc. 1-1]. On August 31, 2022, Defendants removed the action to the

---

[1] Since Plaintiff filed his Complaint, the NCDPS has been renamed the North Carolina Department of Adult Corrections (NCDAC) and the Court will hereinafter refer to it as such.

United States District Court for the Eastern District of North Carolina and paid the filing fee.[2] [See Doc. 1; 8/31/2022 Docket Entry]. On November 4, 2022, Defendants moved to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6) for Plaintiff's failure to state a claim for relief. [Doc. 8 at 1]. Defendants also argued, in part, that Plaintiff's claim against Defendant Buffaloe for his alleged failure to prevent K2 from being smoked in prisons, should be dismissed for "improperly claim splitting" because Plaintiff brings "the same claim against current Secretary Defendant Eddie Buffaloe as he filed in his prior action 5:22-CT-3046, where [Plaintiff] named then Secretary Erik Hooks as a defendant."[3] [Doc. 9 at 6-7].

Plaintiff responded to Defendants' motion to dismiss [Doc. 13] and moved to amend his Complaint "to correct any deficiency" [Doc. 15; Doc. 13 at 1 (quoted language)]. In his motion to amend, which doubled as a proposed Amended Complaint, Plaintiff set out a stream-of-consciousness recitation of alleged facts. [See Doc. 15; see also Doc. 14]. On September 29, 2023, the Eastern District transferred the matter to this Court because Plaintiff's claims arise from events alleged to have occurred at MVCI, which is in this district. [Doc. 18 at 2]. The Court granted Plaintiff's motion to amend his Complaint. The Court required Plaintiff to submit his Amended Complaint on the proper form and noted that Plaintiff's proposed Amended Complaint "[was] so meandering and disjointed as to be unreviewable, particularly in attempting to reconcile

---

[2] As previously noted, Plaintiff is a three-striker under 28 U.S.C. § 1915(g) and, therefore, cannot file actions *in forma pauperis* in federal court absent a showing of imminent danger deriving from the challenged conditions. See Evans v. City of Jacksonville, NC, 5:16-ct-3092-FL (E.D.N.C. Dec. 2, 2016) (summarizing the Plaintiff's litigation history). Cf. Lisenby v. Lear, 674 F.3d 259, 263 (4th Cir. 2012) (the PLRA does not strip a court of subject-matter jurisdiction over a removed case brought by a "three strikes" prisoner). It appears given Plaintiff's prodigious litigation history and recent new cases removed to this Court that Plaintiff now runs an end run around § 1915(g) by filing his cases in state court, knowing that defendants will remove them to federal court and pay the filing fee. [See Doc. 21 at 2 n.1].

[3] This action has since been dismissed without prejudice for Plaintiff's failure to state a claim for relief. [Case No. 5:22-ct-03046-D, Doc. 29 (E.D.N.C.)].

it with Plaintiff's other pending and recently dismissed potentially related claims and actions." [Doc. 21 at 3].

On October 19, 2023, Plaintiff timely filed an Amended Complaint, which is only marginally more comprehensible than his proposed Amended Complaint. [Doc. 22]. Plaintiff again names Defendants Buffaloe, Slagle, Gibbs, Phillips, Wise, and Mask in their official and individual capacities. [Doc. 22 at 3-5]. Plaintiff alleges that the following occurred between November 2021 and January 2023 at MVCI.

Defendant Buffaloe has ultimate responsibility for the promulgation and implementation of NCDAC policies and procedures and management of the NCDAC. Defendant Slagle, as Warden of MVCI, is a policymaker and "has final authority and responsibility for all matters occurring within [MVCI]," including "the selection criteria, supervision of staff who work directly with offenders." [Id. at 11-12]. Defendants Buffaloe and Slagle are also responsible for "improperly training and supervising the [NCDAC] staff who carry out these policies and who conduct has injured the plaintiff." [Id. at 9 (errors uncorrected); see also id. at 17].

Defendants Buffalo and Slagle were "the direct cause of K-2[4] and tobacco being allowed at MVCI and into North Carolina Prison." [Id. at 8]. Defendants Buffaloe and Slagle failed to implement policies and follow laws prohibiting the smoking of K-2 in North Carolina prisons, including MVCI, and similarly failed to enforce a "no smoking" policy. [Id. at 7]. Plaintiff was exposed to secondhand tobacco and K-2 smoke between November 15, 2021, and January 12, 2023. Plaintiff has heart, lung, bladder, and kidney problems and has "had to have his medication increased." [Id. at 10]. Plaintiff has also "suffered psychotic effect including extreme anxiety, confusion, paranoia, hallucination[,] altered perception, elevated mood all the results of

---

[4] Plaintiff alleges that "K-2 is synthetic cannabis that is human made mind altering chemicals that affects the brains." [Doc. 22 at 8 (errors uncorrected)].

cannabinoid affect of K-2 chemical product." [Id. at 11 (errors uncorrected)].

Plaintiff saw Defendants Phillips, Mask, and Wise shredding Plaintiff's grievance. These Defendants kept telling Plaintiff that they never received the grievance to frustrate him into not satisfying the pre-filing exhaustion requirement. [Id. at 12, 18]. Defendant Phillips had authority over Defendant Mask and allowed Defendant Mask to intimidate Plaintiff into not filing legal action "against the prison system and employees by cur[s]ing, loud talking, pointing his finger in plaintiff's face." [Id.].

Plaintiff alleges vaguely that "Phillips action demostrated a retaliation claim," but does not allege what "action" he is referring to. [Id. at 13 (errors uncorrected)]. Plaintiff then alleges the elements of a retaliation claim and that he, a black man, was "surrounded in a small office with about (5) five [white] officer[s]" that Plaintiff had seen assault a white inmate high on K-2 a few weeks earlier. [Id.]. Defendant Gibbs "signed off on these grievance." [Id. (error uncorrected)].

Defendants Phillips, Wise, Mask, and Gibbs interfered with Plaintiff's pending state court motion for appropriate relief (MAR) by forcing Plaintiff to destroy discovery materials in that matter. [Id. at 14]. Plaintiff had "several court order[s]" in his state proceeding allowing him to have these legal materials. [Id. at 15]. Moreover, Plaintiff had been appointed an attorney and an evidentiary hearing had been set. [Id. at 18]. Plaintiff's MAR was "in the final stage" when Defendants Phillips, Wise, Mask, and Gibbs told Plaintiff his materials were a fire hazard and they had nowhere to store them, forcing Plaintiff to get rid them. [Id. at 14-16]. The destruction of Plaintiff's "legal discovery resulted in longer incarceration, delay in other motion and restricted attorney access." [Id. at 17]. Defendants' actions "prevented [Plaintiff from] using the court to attack [his] sentence and to challenge the condition of his confinement which was the smoking of tobacco and K-2." [Id. at 15]. Defendant Phillips was responsible for the storage of Plaintiff legal

materials. [Id. at 18]. She reviewed the court order allowing Plaintiff to have the materials and made a copy of the order for Defendant Slagle. [Id. at 19]. Plaintiff's attorney called and left messages for Defendant Slagle, through Slagle's "personal secretary," advising that the materials were being destroyed. [Id. at 16-17]. Plaintiff had no issues at his previous places of incarceration with possessing and accessing his legal materials. [Id. at 16].

Defendants Slagle, Phillips, Gibbs, Mask, and Wise "created a racist environment by allowing white inmates to prose [*sic*] legal material in large amount without interfearing [*sic*] with their material." [Id. at 15]. White inmates were also given jobs, while black inmates were not. [Id.].

Plaintiff claims that Defendants violated his rights under the First, Fourth, Eighth, and Fourteenth Amendments.[5] [Id. at 3-5]. For relief, Plaintiff seeks compensatory and punitive damages, attorney's fees and court costs, and injunctive relief, including a prohibition against Defendants violating Plaintiff's rights. [Id. at 9, 21].

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915A.

In its frivolity review, this Court must determine whether the Complaint raises an

---

[5] Plaintiff's allegations do not implicate the Fourth Amendment and this claim will not be addressed further.

5

indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

### III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed by a "person" acting under color of state law. See 42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Health & Hosp. Corp. of Marion Cnty. v. Talevski, 599 U.S. 166, 143 S.Ct. 1444 (2023). The Court will address those claims fairly raised by Plaintiff's allegations.

#### A. Official Capacity Claims

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Because a state is not a "person" under § 1983, state officials acting in their official capacities cannot be sued for damages thereunder. Allen v. Cooper, No. 1:19-cv-794, 2019 WL 6255220, at *2 (M.D.N.C. Nov. 22, 2019). Furthermore, as noted the Eleventh Amendment bars suits for monetary damages against the State of North Carolina and its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003). Here, Plaintiff purports to sue Defendants in their official capacities for monetary damages and injunctive relief "prohibiting defendant[s] from violating his rights." [Doc. 22 at 9]. Plaintiff's claims for monetary damages

6

against Defendants in their official capacities fail as a matter of law. As for Plaintiff's claim for injunctive relief, he has been transferred to a different correctional facility and no longer complains that he is exposed to secondhand K-2 or tobacco smoke. As such, Plaintiff's claim for injunctive relief is moot. Incumaa v. Ozmint, 507 F.3d 281, 286-87 (4th Cir. 2007).

Plaintiff's official capacity claims, therefore, do not survive initial review and will be dismissed.

### B. First Amendment

#### 1. Denial of Access to the Courts

The Supreme Court stated in Bounds v. Smith, 430 U.S. 817 (1977), that prisoners must have meaningful access to the courts. The "meaningful access" referred to in Bounds does not, however, entitle a plaintiff to total or unlimited access. See Moore v. Gray, No. 5:04-CT-918-FL, 2005 WL 3448047, at *1 (E.D.N.C. Jan. 26, 2005), *aff'd*, 133 Fed. App'x 913 (4th Cir. 2005) (unpublished) (citation omitted). The right of access to the courts only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement. See Lewis v. Casey, 518 U.S. 343, 356-57 (1996). Moreover, as a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury. See id. at 349. "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim challenging their conviction or conditions of confinement. See id. A plaintiff's "[f]ailure to show that a 'nonfrivolous legal claim has been frustrated' is fatal to his Bounds claim." Alvarez v. Hill, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (quoting Casey, 518 U.S. at 353).

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, the Plaintiff's claim for denial of access to the courts survives initial review as not

clearly frivolous as to Defendants Slagle, Phillips, Wise, Mask, and Gibbs based on their alleged destruction of Plaintiff's legal materials. Plaintiff, however, has failed to state such a claim based on Defendants' alleged conduct relative to Plaintiff's grievances and attempts to thwart Plaintiff's exhaustion of administrative remedies. That is, Plaintiff has not alleged that this conduct caused actual injury. The Court will dismiss this claim.

### 2. Retaliation

An inmate has a clearly established First Amendment right to be free from retaliation for filing lawsuits. See Booker v. S.C. Dep't of Corrs., 855 F.3d 533, 540 (4th Cir. 2017); Thompson v. Commonwealth of Va., 878 F.3d 89, 110 (4th Cir. 2017). Inmates also have a protected First Amendment right to complain to prison officials about prison conditions and improper treatment by prison employees that affect them. See Patton v. Kimble, 717 Fed. App'x 271, 272 (4th Cir. 2018).

To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct. Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (quotation marks and citation omitted). Retaliation claims brought by prisoners, however, are treated with skepticism because every act of discipline by a prison official is retaliatory in that it responds directly to prisoner misconduct. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). More, bare or conclusory assertions of retaliation are insufficient to establish a retaliation claim. Id., 40 F.3d at 74.

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, the Plaintiff has nonetheless failed to state a retaliation claim against any Defendant. At

best, Plaintiff vaguely alleges that some unidentified action by Defendant Phillips "demo[n]strated a retaliation claim" and that Plaintiff was in a small office "surrounded" by five unidentified white officers. The Court, therefore, will dismiss this claim.

### C. Eighth Amendment

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "The Eighth Amendment 'does not prohibit cruel and unusual prison conditions.'" Thorpe v. Clarke, 37 F.4th 926, 940 (4th Cir. 2022) (quoting Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993)). "It asks instead whether the conditions of confinement inflict harm that is, objectively, sufficiently serious to deprive of minimal civilized necessities." Id. (citation omitted). "Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment prohibition against cruel and unusual punishment." Dixon v. Godinez, 114 F.3d 640, 642 (7th Cir. 1997). Extreme deprivations are required. Hudson v. McMillian, 503 U.S. 1, 9 (1992).

To establish an Eighth Amendment claim, an inmate must satisfy both an objective component—that the harm inflicted was sufficiently serious—and subjective component—that the prison official acted with a sufficiently culpable state of mind. Williams, 77 F.3d at 761. The Supreme Court has stated that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. A plaintiff must also allege "a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993). Nonetheless, the law is

well-established that taunting comments, slurs, threats, and other verbal harassment by correctional facility staff, without more, are not actionable under § 1983. Wilson v. United States, 332 F.R.D. 505, 520 (S.D. W.Va. Aug. 19, 2019) (collecting cases).

Moreover, to establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants "acted personally" to cause the alleged violation. See Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (citation omitted). As such, the doctrine of respondeat superior does not apply in actions brought under § 1983. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). A supervisor can only be liable where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) there was an "affirmative causal link" between her inaction and the constitutional injury." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

Plaintiff's Eighth Amendment claim against Defendants Buffaloe and Slagle related to Plaintiff's exposure to secondhand K-2 and tobacco smoke is based on their supervisory roles in the NCDAC and MVCI, respectively. Plaintiff, however, has not plausibly alleged facts sufficient to state an Eighth Amendment claim based on supervisory liability. Moreover, Plaintiff fails to allege how often or consistently he was exposed to secondhand smoke, that he suffered a serious or significant physical or emotional injury, or that Defendants Buffaloe or Slagle were subjectively aware of a substantial risk of serious harm to the Plaintiff as a result of the challenged condition. See Helling v. McKinney, 509 U.S. 25, 35-36, 113 S.Ct. 2475, 2481-82 (1993). The Court, therefore, will dismiss Plaintiff's Eighth Amendment claim based on alleged exposure to secondhand smoke.

Finally, to the extent Plaintiff seeks to state an Eighth Amendment claim based on

Defendant Mask's verbal harassment, Plaintiff has also failed because such harassment is not actionable under § 1983. Wilson, 332 F.R.D. at 520.

### D. Fourteenth Amendment

#### 1. Equal Protection

To state an equal protection claim, Plaintiff must allege that he has been treated differently from others with whom he is similarly situated, and that the unequal treatment was the result of intentional or purposeful discrimination. See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). In doing so, the plaintiff must set forth "specific, non-conclusory factual allegations that establish an improper [discriminatory] motive." Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003) (quoting Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir. 2001)).

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, Plaintiff's equal protection claim based on his allegation that Defendants Slagle, Phillips, Gibbs, Mask, and Wise created a "racist environment" by not interfering with the "large amount" of legal materials of white inmates at MVCI but called for the destruction of Plaintiff's materials is not clearly frivolous and survives initial review. To the extent Plaintiff sought to state an equal protection claim based on white inmates being given jobs and black inmates not, he has failed. Plaintiff failed to allege any involvement by the Defendants or that he was affected by this alleged disparate treatment. The Court will dismiss this claim.

#### 2. Due Process

"[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). "An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance procedure." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017). As such, taking Plaintiff's allegations

as true and giving him the benefit of every reasonable inference, Plaintiff has failed to state a due process claim based on any denial or destruction of his grievances. The Court will dismiss this claim.

## IV. CONCLUSION

In sum, the Complaint survives initial review under 28 U.S.C. §§ 1915A and 1915(e) as to Plaintiff's First Amendment denial of access to the courts claim and Plaintiff's Fourteenth Amendment equal protection claim in accordance with the terms of this Order. Plaintiff's remaining claims, including any official capacity claims, fail initial review and will be dismissed.

## ORDER

**IT IS, THEREFORE, ORDERED** that all claims asserted in this matter as to all Defendants are hereby **DISMISSED** for failure to state a claim, except for Plaintiff's First Amendment denial of access to the courts claim and Fourteenth Amendment equal protection claim, which are allowed to pass initial review in accordance with the terms of this Order.

**IT IS FURTHER ORDERED** that Defendant Buffaloe, Jr., is hereby **DISMISSED** as a Defendant in this matter.

**IT IS FURTHER ORDERED** that the Clerk of Court shall commence the procedure for waiver of service as set forth in Local Civil Rule 4.3 for Defendants Slagle, Gibbs, Mask, Phillips, and Wise, who are alleged to be current or former employees of NCDAC.

The Clerk is also instructed to mail Plaintiff an Opt-In/Opt-Out form pursuant to Standing Order 3:19-mc-00060-FDW.

Signed: November 1, 2023

**IT IS SO ORDERED**.

Kenneth D. Bell
United States District Judge